UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>    Defendant. | Case No. 3:17-cv-03676-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING MOTION TO WITHDRAW AS ATTORNEY**<br><br>Re: Dkt. No. 15, 34 |

**INTRODUCTION**

Plaintiff Steve Johnson filed this action against Nationstar Mortgage, LLC ("Nationstar") asserting claims for breach of contract, violation of the California Homeowner's Bill of Rights ("HBOR"), negligence, and violation of California Business and Professions Code section 17200 ("UCL") based on Nationstar's servicing of a loan secured by real property owned by Johnson. Nationstar moved to dismiss Johnson's complaint shortly after it was removed from state court. I stayed the case to give the parties an opportunity to confer with the Alternative Dispute Resolution Unit, but the parties' attempts to settle have been unsuccessful.

Nationstar's motion is GRANTED IN PART AND DENIED IN PART. Johnson's breach of contract and negligence allegations sufficiently plead a plausible basis for relief, as does his HBOR claim under Civil Code section 2923.7. The other HBOR claim and UCL claims fail; Johnson never submitted a final loan modification application and the harm of which he complains was caused by his default, not by Nationstar's conduct. Those claims are dismissed WITHOUT LEAVE TO AMEND.

In the time since the hearing on Nationstar's motion, plaintiff's counsel filed a motion to withdraw as attorney for Johnson. Nationstar filed a statement of non-opposition, and Johnson did

1 not oppose. The hearing is VACATED and the motion is GRANTED. Counsel has provided good cause for withdrawal, and has attested that Johnson received notice of his intent to withdraw in accordance with Civil Local Rule 11-5. Counsel is relieved from representing Johnson, conditioned on continuing to provide Johnson with copies of any filed documents, including this Order, until Johnson retains new counsel, signs up to access the court's electronic filing system, or files his first pleading after today's Order.

## BACKGROUND

### I. FACTUAL BACKGROUND

On or about July 20, 2007,[1] Johnson purchased the real property located at 170 King Street #1111 in San Francisco, secured by a promissory note in favor of Bank of America, N.A. in the amount of $635,250.00. First Am. Compl. ¶ 17 ("FAC")(Dkt. No. 14). Servicing rights on the loan were later transferred to Nationstar. *Id*. ¶¶ 17, 19.

Johnson alleges that he made mortgage payments "until experiencing financial hardship due to the downturn in the economy." FAC ¶ 18. In early 2016, he contacted Nationstar to request a foreclosure prevention alternative. *Id*. ¶ 20. Nationstar "gave [him] the run around and stonewalled his loan modification attempts, switching him from one Single Point of Contact (SPOC) to another[,]" but the "final" one told him he would receive a loan modification package within one week. *Id*. In mid-2016, he followed up again and a new representative told him his SPOC was not available, but the new representative would send him a loan modification application. *Id*. ¶ 21. To date, he has yet to receive a loan modification application from Nationstar. *Id*.

In October 2016, Johnson received a letter from Nationstar indicating that he was approved for a Trial Modification Agreement ("TPP"). FAC ¶ 22. Johnson contacted a representative at Nationstar who informed him that if he tendered approximately $4,700 a month starting November 1, 2016 for four consecutive months, he would be approved for a permanent loan

---

[1] The complaint indicates a purchase date on or about July 20, 2017, but notes that the grant deed was recorded on July 20, 2007. FAC ¶ 16; *see* Grant Deed (*id*., Ex. A). From this information, one can infer that Johnson intended to allege a purchase date on or about July 20, 2007 (not 2017).

2

modification and any foreclosure sale would be "cancelled" upon the first payment. *Id.* ¶ 23. Johnson agreed to the terms of the TPP and confirmed that payments would begin on November 7, but when he requested written confirmation Nationstar informed him that it would only provide written confirmation upon a final loan modification approval. *Id.* ¶ 24.

Pursuant to the TPP, Nationstar debited the first payment in the amount of $4,700 on November 7, 2016. FAC ¶ 25. Unknown to Johnson, Nationstar attempted a second withdrawal on November 20, 2016, but the debit did not go through because Johnson did not have sufficient funds in his account. *Id.* ¶ 26. He attempted to contact Nationstar but his "calls were not answered, nor did any representative contact [him] back." *Id.* ¶ 27.

On or about November 29, 2016, Clear Recon Corporation recorded a Notice of Trustee's Sale on the property. FAC ¶ 28; *see* NOTS (FAC, Ex. C). The NOTS set the sale date as December 27, 2016, but Johnson alleges a sale date of June 13, 2017. FAC ¶ 29.

## II. PROCEDURAL HISTORY

On June 27, 2017, Nationstar removed this action to this court. Dkt. No. 1. Johnson's June 9, 2017 state court complaint asserted five claims against Nationstar: breach of contract, violation of California Civil Code sections 2923.6(c) and (f) of the California Homeowner's Bill of Rights (HBOR), violation of California Civil Code section 2923.7 of the HBOR, negligence, and violation of California Business and Professions Code section 17200. Dkt. No. 1 at 29. Nationstar filed its first motion to dismiss on July 19, 2017, Dkt. No. 10. On July 31, 2017, I referred the action to the Alternative Dispute Resolution (ADR) Unit, stayed the proceedings, and took Nationstar's first motion to dismiss off calendar. Dkt. No. 12. On August 2, 2017, Johnson filed his amended complaint asserting the same five causes of action, which Nationstar moved to dismiss on August 16, 2017, Dkt. No. 15, prior to the parties' scheduled call with the ADR Unit, Dkt. No. 13. I again stayed the proceedings and took Nationstar's motion off calendar, pending attempts at ADR. Dkt. No. 17.

The case thereafter appeared to be nearing settlement, but when a notice of settlement was not filed according to plan, the hearing on Nationstar's motion to dismiss was reset to December 20, 2017. Dkt. No. 24.

3

On November 22, 2017, Johnson filed an application for a temporary restraining order enjoining a foreclosure sale scheduled for November 28, 2017. Dkt. No. 25.[2] At the November 27 hearing on the temporary restraining order, Nationstar agreed to postpone and re-notice the scheduled sale, rendering the TRO application moot. Dkt. No. 28. I encouraged the parties to meet and confer to attempt to salvage the previous agreement, but indicated that if not, the motion to dismiss would be heard as scheduled. Dkt. No. 28.

I heard argument on the present motion on December 20, 2017 and encouraged the parties to continue in their settlement efforts. 12/20/17 Minute Order (Dkt. No. 33). I ordered them to submit a joint notice on January 16, 2018 regarding the status of those efforts and indicated that a written order on the pending motion would follow. *Id*. The joint notice indicates that Nationstar received two checks to apply towards the TPP, but "the checks were returned due to insufficient funds." Joint Status Report at 2 (Dkt. No. 35). Nationstar notes that it "will not reinstate the TPP or offer a final loan modification[,]" but it "remains willing to negotiate a settlement agreement to resolve this matter." *Id*. As of January 16, 2018, a foreclosure sale of the property had not been scheduled. *Id*.

On January 10, 2018, Mr. Johnson's counsel filed a motion to withdraw as his attorney because he has "failed and refused to pay for attorneys fees and costs pursuant to the fee agreement[.]" Mot. to Withdraw as Counsel for Pl. at 2 (Dkt. No. 34). Counsel indicates that Mr. Johnson is "expressly aware" of his intent to withdraw and has been notified both verbally and in writing. Ambarchyan Decl. ¶¶ 2–4.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

---

[2] The TRO application set forth some of the details surrounding the parties' attempts to settle this action in mediation. Those details are not mentioned here because they are not pertinent to this motion.

4

when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

### I. BREACH OF CONTRACT CLAIM

Nationstar argues that Johnson's breach of contract claim based on the TPP is barred by the statute of frauds. Mot. to Dismiss FAC at 5 ("Mot.")(Dkt. No. 15). The statute of frauds provides that certain "contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent[.]" Cal. Civ. Code § 1624. Home loans secured by real property are covered by the statute. *Id.* Nationstar points to *Secrest v. Security National Mortgage Loan Trust 2002-2*, to argue that modifications to home loans are likewise subject to the statute of frauds, and that "[t]he payment of money is not

5

sufficient part performance to take an oral agreement out of the statute of frauds, for the party paying money under an invalid contract has an adequate remedy at law." 167 Cal. App. 4th 544, 547–555 (Cal. Ct. App. 2008)(internal quotation marks, citation, and alterations omitted).

Johnson counters that a TPP agreement constitutes a binding contract under state law. Opp'n at 6 (Dkt. No. 29). He highlights the decision in *Corvello v. Wells Fargo Bank, NA*, in which the Ninth Circuit reversed the district court's decision granting Wells Fargo's motion to dismiss the borrowers' claims for breach of TPP agreements. 728 F.3d 878 (9th Cir. 2013). The court found, "[w]here, as here, borrowers allege, and we must assume, that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Id*. at 884. The court specifically noted that a borrower's breach of contract claim survives the statute of frauds when he has alleged "full performance of [his] obligations under the contract." *Id*. at 885.

Johnson has never alleged full performance of his obligations under the TPP.[3] Rather, he alleges that Nationstar failed to uphold its end of the bargain by attempting to withdraw the second payment prior to the agreed upon date. He contends that Nationstar's actions interfered with his ability to fully perform under the TPP, thereby precluding him from qualifying for a permanent loan modification. His complaint also alludes to principles of equitable estoppel, although his opposition does not present that argument. *See* FAC ¶ 40 ("Plaintiff was relying on [defendants'] representations to continue to make payments…"); *id*. ¶ 41 ("Defendants made false representations to Plaintiff to induce Plaintiff's reliance… ."); *id*. (Plaintiff reasonably relied upon Defendants [sic] representations to his detriment.").

Under these circumstances and drawing all reasonable inferences in favor of Johnson, he has plausibly pleaded a claim for breach of contract. "The statute of frauds does not require a written contract; a 'note or memorandum ... subscribed by the party to be charged' is adequate." *Sterling v. Taylor*, 40 Cal. 4th 757, 765 (Cal. 2007). "A memorandum satisfies the statute of

---

[3] In fact, actions brought to my attention through the parties' attempts to resolve this case and various hearings make it clear that Johnson has repeatedly failed to perform his obligations under subsequent agreements. While that is likely to have some impact on the merits, it does not impact Johnson's allegations with respect to the initial TPP agreement.

6

frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty." *Id*. at 766. Details are not necessary and "[w]hat is essential depends on the agreement and its context and also on the subsequent conduct of the parties[.]" *Id*. Moreover, "the statute of frauds merely serves an evidentiary purpose." *Id*. (internal quotation marks and alterations omitted). Johnson alleges that Nationstar offered the TPP agreement in a written letter. FAC ¶ 22. He thereafter contacted a representative, they agreed on terms, and Johnson accepted. *Id*. ¶¶ 23–24. He sought written confirmation, but Nationstar indicated that it would only provide written confirmation upon final loan modification agreement. *Id*. ¶ 24. He then tendered the first payment, in accordance with the agreement. *Id*. ¶ 25.

Nationstar cannot assert a statute of frauds defense as part of its motion to dismiss when it is alleged that it refused to provide written confirmation of the agreement, accepted Johnson's partial performance, and interfered with his continued performance. The statute of frauds—which seeks to prevent fraud—would not be served in such a situation. Given the existence of a letter from Nationstar documenting some terms of the offer and Johnson's partial performance under the agreement,[4] it is not the "payment of money alone" that "take[s] this agreement out of the statute of frauds[.]" *Cf. Secrest*, 167 Cal. App. 4th at 548 ("[U]nder well-established principles of California law, payment of money alone is not enough as a matter of law to take an agreement out of the statute of frauds[.]"). Nationstar is estopped from asserting the statute of frauds. Since that is the only grounds on which Nationstar challenges this claim, its motion to dismiss is DENIED. *See Corvello*, 728 F.3d 878, 884 (finding valid claims for breach of TPP agreements).

## II. CALIFORNIA CIVIL CODE SECTION 2923.6

The HBOR prevents a mortgage servicer from recording a notice of default or notice of sale, or conducting a trustee's sale, "while a first lien loan modification application is pending."

---

[4] Johnson did not attach the original letter to his complaint, but he attached to his TRO application a letter documenting the terms of the second TPP to which the parties agreed when the case was going through ADR. Dkt. No. 25 at 78. This agreement is not a part of Johnson's complaint. I mention it only to note that it is reasonable to infer that the original letter followed a similar format.

7

Cal. Civil Code § 2923.6. A borrower must necessarily have submitted a complete application to trigger this provision precluding "dual tracking."

Nationstar argues that this claim must fail because Johnson never provided a completed loan modification application. Mot. at 6. Johnson contends that Nationstar prevented him from submitting a completed loan modification application by switching him from one SPOC to another, FAC ¶ 48, subjecting him to the terms of the TPP prior to providing him with an application for a permanent loan modification, and then breaching the terms of the TPP, Opp'n at 8. I understand Johnson's position, but he has not provided any support for his argument that Nationstar's failure to provide an application enables him to state a claim under section 2923.6. In the absence of any authority to the contrary, the plain language of the statute must control. Since Johnson never "submit[ted] a complete application[,]" his claim for dual tracking must fail. Nationstar's motion to dismiss this claim is GRANTED WITHOUT LEAVE TO AMEND.

### III. CALIFORNIA CIVIL CODE SECTION 2923.7[5]

The HBOR states, "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7.

Johnson alleges that he contacted Nationstar and requested a foreclosure prevention alternative, but Nationstar gave him "the run around," "stonewalled his loan modification attempts," switched him from one SPOC to another, and ultimately failed to provide him with a loan modification application as promised. FAC ¶ 54. Nationstar cites to *Shupe v. Nationstar Mortgage LLC*, for the proposition that "a violation of § 2923.7 is actionable only when that violation is material." 231 F. Supp. 3d 597, 603 (E.D. Cal. 2017). Under section 2924.12, "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive

---

[5] In its motion, Nationstar argued that Johnson's claim should fail because he never alleged that he specifically requested a SPOC. Mot. at 7. But it abandoned this argument in reply, since the case that it relied on has been vacated. *See* Reply at 4 n. 1 (citing *Conroy v. Wells Fargo Bank, N.A.*, 13 Cal. App. 5th 1012, 221 Cal. Rptr. 3d 551 (Ct. App. 2017), *reh'g granted, opinion not citeable* (Aug. 25, 2017), *vacated*, No. C078914, 2017 WL 5711804 (Cal. Ct. App. Nov. 28, 2017)).

8

relief to enjoin a material violation[,]" or "[a]fter a trustee's deed upon sale has been recorded, a mortgage servicer … shall be liable to a borrower for actual economic damages … resulting from a material violation[.]" Cal. Civ. Code § 2924.12.

Johnson argues that Nationstar's failure amounts to a material violation because "his attempts at submitting a loss mitigation package … were futile[.]" Opp'n at 10. I understand Nationstar's argument that Johnson was ultimately approved for a TPP, so it could not have materially violated the statute. Reply at 4 (Dkt. No. 30). But given Johnson's alleged difficulties in communicating with Nationstar over the TPP, and the implications that had on his ability to submit a completed loan modification application, he has stated a claim for a material violation of the SPOC provision. Nationstar's motion to dismiss this claim is DENIED. That said, Nationstar's subsequent conduct, and Johnson's, will almost certainly impact consideration of the merits.

## IV. NEGLIGENCE

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

Nationstar argues that Johnson's negligence claim must fail because there is no duty of care. Mot. at 8. It acknowledges that "[c]ourts are split on whether a loan servicer owes a duty of care in reviewing a loan modification[,]" but it urges me to follow the "better reasoned … decisions … and find that the law imposes no such novel duty." *Id*. at 8–9. It fails to recognize, however, that I have previously sided with courts finding a common law duty to exercise reasonable care in the processing of a borrower's application for a loan modification. *See Clinton v. Select Portfolio Servicing, Inc.*, Case No. 2:16-cv-02228-WHO, 225 F. Supp. 3d 1168, 1174 (E.D. Cal. 2016)(agreeing with the reasoning in *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (Cal. Ct. App. 2014) and *Martinez v. Flagstar Bank, FSB*, 2016 WL 3906810, at *1 (E.D. Cal. July 19, 2016)). I see no reason to change my position on the issue.

9

But that does not resolve the issue of whether Johnson has stated a claim for negligence here, where Nationstar never provided him with an application for a loan modification. Johnson alleges that Nationstar "breached its duty by (1) failing to review Plaintiff's loan modification application in a timely manner; (2) failing to provide Plaintiff with a good faith review of their loan modification application; (3) approving Plaintiff for a Trial Modification, but refusing to provide a permanent loan modification; and (4) initiating and continuing foreclosure in violation of public policy and statutory restrictions on foreclosures." FAC ¶ 61. The first two contentions appear inconsistent with Johnson's representations that he never submitted a loan modification application. And the last two arguments are not tied to a purported duty of care. But I also fail to see a sound reason for finding a duty of care once an individual submits a completed application and not finding one once an individual has shown an intent to be bound by a trial modification agreement. In essence, Johnson's negligence claim provides an alternative theory of relief to his breach of contract claim. Nationstar's motion to dismiss the negligence claim is DENIED.

## V. VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.

California's Unfair Competition Law defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code §17200, et seq. "To have standing to assert a Section 17200 claim, the plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017)(quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 885 (2011)); *see also* Cal. Bus. & Prof. Code § 17204.

Nationstar argues that there was no unfair or unlawful conduct, and Johnson "lacks UCL standing as he has not suffered any economic loss caused by the unfair competition he challenges." Mot. at 9–10. And even if the threat of foreclosure were sufficient to establish an injury, he cannot satisfy the causation element because the harm is due to his own default, not as a result of any unfair competition by Nationstar. *Id.* at 10. Johnson urges that he has "alleged injury

in fact by pleading possible loss of the Subject Property, loss of the opportunity to pursue foreclosure alternatives … [and] damage to [his] credit[.]" Opp'n at 15; *see also* FAC ¶ 73 (including "back dues and interest that has [sic] accrued to date that would not have accrued but for Defendants' action, the cost and expense of the instant pending litigation… ."). I find this economic injury sufficient to satisfy the first prong. But he must also show that this injury was caused by the unfair or unlawful practices. *See In re Turner*, 859 F.3d at 1151.

Some courts have allowed a borrower's UCL claim to survive a lender's standing challenge by differentiating between the injury caused by the borrower's default and the injury caused by the borrower's unlawful conduct. *E.g.*, *Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890, at *9 (C.D. Cal. Sept. 26, 2014)("[W]hile the loss of the property may ultimately have resulted from Plaintiffs' failure to pay their mortgage, a fact unrelated to the alleged unfair and unlawful practices, Plaintiffs adequately allege that the practices of which they complain are related to some form of loss they may have suffered related to the property[.]"). Other courts refuse to differentiate, finding that when a default predates any alleged unlawful act it alone must be the cause of any subsequent economic harm. *E.g.*, *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1118 (E.D. Cal. 2015)("Because their default occurred significantly prior to the alleged unlawful acts, the actions could not have caused the alleged economic loss.").

I agree with the latter position that the economic harm flowing from these situations is necessarily caused by the borrower's default, and not the alleged unlawful acts. Nationstar's motion to dismiss this claim is GRANTED.

**CONCLUSION**

In accordance with the forgoing, Nationstar's motion is GRANTED IN PART and DENIED IN PART. Johnson shall have 35 days from the date of this Order to file an amended complaint if he wishes to do so.

Plaintiff's counsel's motion to withdraw is GRANTED, subject to counsel's continued obligation to serve Johnson with pleadings and Orders filed on the docket in this case until Johnson secures new counsel, signs up to access the court's electronic filing system, or files any pleading or other document with the court. The Clerk's records shall reflect that Mr. Johnson is

11

now representing himself, pro se, and that his contact information is:

    Steve Johnson
    170 King Street, # 1111
    San Francisco, CA 94107
    telephone: (425) 985-5694
    email: stevejohnson33@gmail.com

It is Johnson's responsibility to file Notice of any change of address with the court.

**IT IS SO ORDERED.**

Dated: February 9, 2018

                                          William H. Orrick
                                          United States District Judge