UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE JOHNSON,

        Plaintiff,

    v.

NATIONSTAR MORTGAGE, LLC,

        Defendant.

Case No. 17-cv-03676-WHO

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT**

Re: Dkt. Nos. 58, 66

      This case arises from a defaulted home loan and an unsuccessful attempt at a loan modification after that default. Plaintiff Steve Johnson brings claims against servicer Nationstar Mortgage, LLC, asserting that Nationstar's conduct during the parties' dealings amounted to breach of contract, violations of California law, and negligence. Before me is Nationstar's motion for summary judgment and Johnson's request for leave to amend his complaint, filed after the hearing on the summary judgment motion. The undisputed facts show that Johnson agreed to the clear terms of the trial payment plan and then failed to comply with those terms. The amendment Johnson proposes would be futile. Accordingly, I will grant Nationstar's motion for summary judgment.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

      In 2007, Johnson purchased the real property located at 170 King Street #1111 in San Francisco, secured by a promissory note in favor of Bank of America, N.A. in the amount of $635,250.00. Request for Judicial Notice ("RJN")[1] Ex. 1 ("Deed of Trust") [Dkt. No. 58-1]. He

---

[1] Nationstar asks that I take judicial notice of thirteen documents. Dkt. No. 58-1. Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of facts that are generally known within

fell behind in his mortgage payments in late 2008 after a change in income. Deposition of Steve Johnson ("Johnson Depo."), Declaration of Tara Mohseni ("Mohseni Decl.") [Dkt. No. 58-2][2] Ex. C, 30:9–24. The loan went into foreclosure in 2010 and on May 25, 2010, a Notice of Trustee's Sale was recorded on the property. RJN Exs. 2, 4. Bank of America transferred the loan to Nationstar in 2013. *Id.* Ex. 6. Johnson filed for bankruptcy on November 12, 2014, and his petition was dismissed on September 23, 2016. *Id.* Ex. 11.

On September 9, 2016, Nationstar sent a letter to Johnson's bankruptcy attorney indicating that it had approved Johnson to enter into a trial payment plan ("TPP") under the Streamline Home Affordable Modification Program ("HAMP").[3] Declaration of Fay Janati ("Janati Decl.") Ex. 3 ("Offer Letter") [Dkt. No. 58-3]. To accept the offer, Johnson was required to make the first payment no later than October 31, 2016. *Id.* at 1. To qualify for a permanent loan modification, the TPP required Johnson to make three payments of $4,135.88 in October, November, and December 2016. *Id.* After making the three trial period payments, Nationstar would offer him a permanent loan modification. October 31 Phone Call Transcript ("Tr."), Johnson Depo. Ex. 7[4] at

---

the trial court's territorial jurisdiction or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2011) (noting that courts may take judicial notice of matters of public record). The complaint and my prior orders are already part of the record in this case. First Amended Complaint ("FAC") [Dkt. No. 14]; Order on Motions to Dismiss and Withdraw [Dkt. No. 37]. Nationstar's request as to these documents is DENIED AS MOOT. Documents 1 through 10 are appropriate for judicial notice because they are matters of the public record. I GRANT the requests as to documents 2, 4, and 6 but DENY AS MOOT the requests for documents 3, 5, 7, 8, and 9 because I did not rely on them in resolving the present motion. The request regarding the docket of Johnson's bankruptcy case *In re Johnson* is also GRANTED. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts.").

[2] All of the exhibits attached to the Mohseni declaration can be found at docket number 58-2.

[3] HAMP is a program "through which mortgage lenders received stimulus funds in exchange for issuing loan modifications to qualified borrowers." *Hernandez v. Wells Fargo & Co.*, No. 18-cv-07354-WHA, 2019 WL 2359198, at *1 (N.D. Cal. June 3, 2019). "[T]he Treasury Department in 2009 launched the HAMP program to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their homes." *Id.* at *2.

[4] The audio of the call was exhibit 7 at Johnson's deposition. In the docket, the call transcript follows the deposition transcript at Exhibit C of the Mohseni declaration.

11.[5]  The letter further informed Johnson and his attorney that Nationstar would not conduct a foreclosure sale during the trial period if Johnson timely made the required payments.  Offer Letter at 6.  If Johnson failed to make a trial payment in the month in which it was due, he would become ineligible for a permanent loan modification.  *Id.*

Johnson called Nationstar on October 31, 2016 to discuss the September letter.  Tr. 2, 6.  He had received the offer from his attorney over the weekend and was concerned about the October payment.  *Id.* at 6.  The Nationstar representative told him that it was "okay" that he had not made the payment yet and that Nationstar could process the payment that day.  *Id.* at 7.  The representative also told him that if he did not accept the TPP offer by providing payment, the offer would be cancelled and foreclosure proceedings would begin.  *Id.* at 13, 16.

Johnson provided the Nationstar representative with his Bank of America routing number and checking account number over the phone.  *Id.* at 15.  The representative confirmed that Nationstar would process October's payment of $4,135.88 that day.  *Id.*  Johnson authorized Nationstar to process his payment, and Nationstar provided him with a confirmation number.  *Id.* at 16–17.  In addition, Johnson re-scheduled the payments due in November and December from the first of the month to November 18 and December 7, respectively.  *Id.* at 19–20.  The representative explained that Nationstar would "automatically draft" all three payments to the checking account that Johnson had provided, and he gave Johnson confirmation numbers for each transaction.  *Id.* at 20–21.  At the end of the call, Johnson confirmed with the representative that if "the successful payments [happened] in October, November, December . . . sometime in January," he would receive a final modification offer.  *Id.* at 24.

On November 10, 2016, Nationstar sent Johnson a letter telling him that the October 31 transaction was returned because there were insufficient funds in his account.  Janati Decl. Ex. 4.  A December 1, 2016 letter informed Johnson that his November 18 transaction was returned because Johnson had stopped payment on it.  *Id.* Ex. 5; Mohseni Decl. Ex. F, Request for

---

[5] Johnson testified that the audio recording of the phone call played for him during his deposition accurately reflected his October 31 call with Nationstar.  Johnson Depo. 44:12–18.  There is no dispute that the transcript accurately captures the recording, and no objection was made to its admission into evidence.

Admission ("RFA") No. 6.

On November 29, 2016, Clear Recon Corporation recorded a Notice of Trustee's Sale on Johnson's property, setting a December 27, 2016 sale. RJN Ex. 10.

## II. PROCEDURAL HISTORY

Johnson filed this action in state court on June 9, 2017, and Nationstar removed it to federal court on June 27, 2017. Notice of Removal [Dkt. No. 1]; *id.* Ex. 1 ("Compl.") [Dkt. No. 1-1]. Johnson amended his complaint on August 2, 2017. First Amended Complaint ("FAC") [Dkt. No. 14]. Both the original and first amended complaint asserted five causes of action against Nationstar. *See id.* On February 9, 2018, I granted in part Nationstar's motion to dismiss, leaving three claims: breach of contract, violation of section 2923.7 of the California Homeowner's Bill of Rights ("HBOR"), and negligence. *See* Order on Motion to Dismiss ("Order on MTD") [Dkt. No 37]. Finding good cause, I also granted defense counsel's motion to withdraw as attorney for Johnson, who now proceeds pro se. *Id.* at 2.

Nationstar now moves for summary judgment. Motion for Summary Judgment ("Mot.") [Dkt. No. 58]. Although Johnson timely opposed Nationstar's motion on June 18, two days later he requested leave to amend his opposition, which I granted. *See* Dkt. Nos. 60, 61, 62. Johnson never filed an amended opposition. I heard argument on July 17, 2019, and at that time I gave Johnson leave to submit relevant portions of the HAMP guidelines as he requested. *See* Dkt. No. 65. On July 19, he filed a notification of supplemental authorities and request for leave to further amend his complaint. Notice and Request ("Supp. Br.") [Dkt. No. 66].

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify

"specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.     MOTION FOR SUMMARY JUDGMENT**

Nationstar moves for summary judgment on the grounds that the undisputed evidence shows (i) Johnson defaulted on his mortgage loan; (ii) Johnson breached the TPP by failing to make the required payments; (iii) Johnson's default authorized Nationstar to foreclose on his property; (iv) Nationstar appointed Johnson a single point of contact in accordance with § 2923.7; and (v) Nationstar did not breach any duty of care owed to Johnson in processing his TPP or otherwise servicing his loan.

**A.     Breach of Contract**

The elements of a cause of action for breach of contract are (i) the existence of the contract, (ii) plaintiff's performance or excuse for nonperformance, (iii) defendant's breach, and (iv) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). According to the first amended complaint, Johnson's theory is that Nationstar breached the contract by attempting to debit his account twice in November 2016 and by proceeding with non-judicial foreclosure.[6] FAC ¶¶ 33, 38. Nationstar argues that Johnson's breach of contract

---

[6] In his opposition, Johnson contends that the "Oral TPP" offered to him on the October 31 phone call "did not [constitute] a complete and documented TPP, as required by law." Oppo. 7. While Johnson cites no authority in support of his contention, even assuming there is such a requirement, the facts show Nationstar provided him with a complete and documented TPP in the September 2016 letter. *See* Offer Letter; Reply [Dkt. No. 64] 4.

claim fails because he, not Nationstar, breached the terms of the TPP.  Mot. 8–9.

Johnson has not presented sufficient evidence to create a triable issue on his breach of contract claim; instead, the undisputed evidence shows that he failed to perform on the terms of the TPP.  *See Oasis W. Realty*, 51 Cal. 4th at 821 (noting that a plaintiff's performance or excuse for nonperformance is an essential element of a contract claim).  Nationstar unambiguously set forth the terms of the TPP in the offer letter and during the phone call.  The TPP offer letter stated that Nationstar had to "receive[]" each trial payment during the month in which it was due, and accordingly, the first trial payment was due no later than October 31.  Offer Letter 1.  On the call—which the transcript accurately reflects, according to Johnson —the representative told him that Nationstar could process the first payment "right [then]," to which Johnson replied, "Okay." Tr. 7.  The representative explained that the TPP offer would expire if Johnson did not make a payment that day and explicitly stated that Nationstar would "automatically draft [the payment] to the checking account" Johnson provided.  *Id.* at 16, 20.

Despite this correspondence, Johnson maintained during discovery that he believed his payment would be processed "like a normal check," rather than as an automatic transfer of funds. *See* Depo. 54:4–10; RFA No. 4.  When Nationstar debited his account immediately, he believed that Nationstar had been "deceptive" and that it had "mishandled" his good-faith payment, and so he stopped payment on the November transaction.  *See* Depo. 54:18–20; RFA No. 6.  Johnson admitted that he had insufficient funds in his account to make the first payment on October 31, but he recalled telling the representative that funds would not be available in his account until November 1.  RFA Nos. 5, 6; Interrog. No. 3.  According to the transcript, this exchange did not occur.  Tr. 19.

Johnson's arguments under the HAMP guidelines do not create a triable issue.  Johnson cannot enforce the guidelines against Nationstar because he lacks a standalone right to do so and because he is not a third-party beneficiary of the servicers' agreement.  *See Woodall v. Wells Fargo & Co.*, No. 15-cv-05347-JST, 2016 WL 4539499, at *2 (N.D. Cal. Aug. 30, 2016); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171 SI, 2010 U.S. Dist. LEXIS 70455, at *14 (N.D. Cal. June 30, 2010).  In addition, he fails to identify provisions where the guidelines in fact impose the

requirements and limitations he suggests are present.[7] Even if Johnson could point to a guideline

that Nationstar allegedly failed to comply with, he has never argued that the TPP was invalid. *See*

*A-Mark Coin Co. v. Gen. Mills, Inc.*, 148 Cal. App. 3d 312, 322 (1983) (noting that "[n]o rights

are enforceable under a void contract").

Because Johnson, not Nationstar, breached the TPP, Nationstar could not have breached by

beginning foreclosure proceedings. Instead, it was entitled to do so under the terms of the TPP

and the Deed of Trust. *See* Offer Letter at 6; Deed of Trust at 13. In his supplemental briefing,

Johnson submitted articles describing settlements Nationstar has entered into and fines regulatory

boards have ordered it to pay, but these articles are not enough to create a genuine issue of

material fact in his case. *See* Suppl. Br. 2–5. For all of these reasons, summary judgment is

appropriate on Johnson's breach of contract claim.

### B. Violation of California Civil Code § 2923.7

Johnson alleges that by not providing him with a single point of contact, Nationstar

violated Section 2923.7 of the California Civil Code. FAC ¶¶ 54–57. The HBOR provides,

"When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall

promptly establish a single point of contact and provide to the borrower one or more direct means

of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). A single point of

contact is "an individual or team of personnel each of whom has the ability and authority to

perform the responsibilities described in subdivisions (b) to (d)."[8] § 2923.7(e). Section 2924.12

allows a borrower to bring an action for injunctive relief to enjoin a material violation of section

---

[7] Johnson contended at the hearing and in his supplemental briefing that Nationstar violated the HAMP guidelines by refusing to provide him with the terms of the loan modification plan until after he had completed the trial payments and by requiring a monthly TPP payment that was more than 10% greater than his original loan payment. *See* Opposition ("Oppo.") [Dkt. No. 60] 5; Suppl. Br. 2. Johnson included the following link in his notice and request for leave to amend: https://www.treasury.gov/press-center/press-releases/Documents/modification_program_guidelines.pdf.

[8] These responsibilities include: "(1) Communicating the process by which the borrower may apply for foreclosure prevention; (2) Coordinating receipt of documents and notifying the borrower of missing documents; (3) Having access to the necessary information to inform the borrower of the current status of the foreclosure prevention alternative; (4) Ensuring the borrower is considered for all foreclosure prevention alternatives; (5) Having access to individuals with the ability to stop the foreclosure process when necessary." Cal. Civ. Code § 2923.7(b).

2923.7. A violation is material when "the alleged violation affected a plaintiff's loan obligations or the modification process." *Morton v. Wells Fargo Bank, N.A.*, No. 16-cv-05833-HRL, 2016 WL 7117041, at *4 (N.D. Cal. Dec. 7, 2016) (internal quotation marks and citation omitted).

Nationstar is entitled to summary judgment on this claim because the undisputed evidence shows that it assigned Johnson an SPOC. Nationstar submitted the letters it sent to Johnson on November 15, 2014, October 8, 2015, and October 24, 2016. Janati Decl. Ex. 6. Each one provided Johnson with the contact information of an updated Dedicated Loan Specialist that Nationstar had assigned to him. Janati Decl. Ex. 6. The first two letters were sent to Johnson's attorney and identified Kristi Berry and then Michael Petrini as Johnson's SPOC. *Id.* The last letter was sent to Johnson at his property and named Todd Beyersdorf. *Id.* These letters provided Johnson with the phone extensions and fax numbers of each specialist. *Id.* The September 2016 letter, which informed Johnson he had been approved for the TPP, also referenced Michael Petrini, his Dedicated Loan Specialist at the time. Offer Letter 1.

These letters show Nationstar complied with its obligation to provide Johnson with an SPOC. *See Gilliam v. Bank of Am., N.A.*, No. 17-cv-01296, 2019 WL 1063399, at *8 (C.D. Cal. Feb. 20, 2019) (granting summary judgment where the borrower presented nothing to undermine the letters the servicer had sent). The letters also demonstrate that Nationstar provided two means for reaching each specialist assigned to him. *See* Cal. Civ. Code § 2923.7(a) (requiring "one or more direct means of communication").

Neither of Johnson's arguments save this cause of action from summary judgment. First, he contends that Nationstar violated section 2923.7 by assigning new specialists to his account. RFA No. 11. But the statute does not prevent the servicer from replacing the contact over time so long as these changes do not "cause a borrower's account to be insufficiently reviewed or managed." *See Hild v. Bank of Am., N.A.*, No. 14-cv-2126, 2015 WL 1813571, at *7 (C.D. Cal. Apr. 21, 2015). Second, Johnson argues that while Nationstar purported to provide him with an SPOC, it did not assign one "in actuality." Oppo. at 7. Nationstar violated section 2923.7 by giving Johnson "the run around" and "[stonewalling] his loan modification attempts." FAC ¶ 54. Johnson argues that Nationstar has no record of his SPOCs making contact with him and that his

8

SPOCs were never "available" to him.  Oppo. 7.  In discovery responses, Johnson asserted that his Dedicated Loan Specialists were not available to speak with him and that when he did reach someone, "they could not provide updates, dates, expected decision time frames, nothing."  *See* RFA No. 11; Interrog. pg. 6.[9]

Even if this conduct could constitute a section 2923.7 violation, Johnson submits no evidence to support a finding that these interactions occurred as he says they did.[10]  Allegations without evidence are insufficient to create a triable issue of fact.  *Cf. MacDonald v. Wells Fargo Bank N.A.*, No. 14-cv-04970-HSG, 2017 WL 1150362, at *2 (N.D. Cal. Mar. 28, 2017) (finding material dispute where there was evidence that separate SPOCs provided borrowers with conflicting information); *Curtis v. Nationstar Mortg. LLC*, No. 14-cv-05167-HRL, 2016 WL 1275599, at *5 (N.D. Cal. Apr. 1, 2016) (finding material dispute where the SPOC sent contradictory information and where the borrower received a letter from an individual who was not assigned as his SPOC); *Tuan Anh Le v. Bank of N.Y. Mellon*, 152 F. Supp. 3d 1200, 1213 (N.D. Cal. 2015) (finding material dispute where there was evidence suggesting the representatives were not sufficiently knowledgeable about the borrower's situation).

In addition, for this claim to survive Johnson would have to present evidence that the alleged violation was material, namely that it "affected [his] loan obligations or the modification process."  *See Morton*, 2016 WL 7117041, at *4.  Instead, the evidence shows that Johnson was "afforded a meaningful opportunity to obtain . . . an alternative to foreclosure in the form of a loan modification."  *See Dowling v. Bank of Am., N.A.*, No. 14-cv-01041, 2017 WL 3284675, at *5 (E.D. Cal. Aug. 2, 2017).  Nationstar presents evidence that Johnson made no attempt to communicate with Nationstar after failing to comply with the TPP terms.  Janati Decl. ¶¶ 9–12. Nationstar is entitled to summary judgment on this claim.

---

[9] The question number that corresponds to this answer was cut off in the copy of the Interrogatories Nationstar submitted.

[10] Discovery responses that completely lack detail about the alleged interactions are insufficient to create a triable issue.

### C. Negligence

Under California negligence law, a plaintiff must prove four elements: (i) duty, (ii) breach, (iii) causation, and (iv) damages. *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250 (2009). Johnson asserts in his complaint that as his loan servicer, Nationstar owed him a duty to exercise reasonable care in processing and reviewing his loan application. FAC ¶ 60. Nationstar allegedly breached that duty by "(1) failing to review Plaintiff's loan modification application in a timely manner; (2) failing to provide Plaintiff with a good faith review of their loan modification application; (3) approving Plaintiff for a Trial Modification, but refusing to provide a permanent loan modification; and (4) initiating and continuing foreclosure in violation of public policy and statutory restrictions on foreclosures." *Id.* ¶ 61.

As I have noted previously, there is a common law duty to exercise reasonable care in the processing of a borrower's application for a loan modification. Order on MTD 9. Accordingly, Nationstar does not assert that it owed no duty of care to Johnson. Mot. 11. Instead, Nationstar argues that summary judgment is appropriate because it did not breach any duty to Johnson by refusing to provide a permanent loan modification despite approving him for a trial modification. *Id.* at 12. In addition, Johnson's allegation that foreclosure was a violation of "public policy and statutory restrictions" is conclusory. *Id.*

Johnson has provided no evidence that would allow a jury to find in his favor on the negligence claim. His first two theories of breach—that Nationstar failed to review his loan modification application in a timely or good faith manner—have no factual basis because Johnson did not submit a loan modification application. *See* FAC ¶¶ 21, 56.[11] As for Nationstar's refusal to provide a permanent loan modification, it only did so after Johnson had breached the clear terms of the TPP. Johnson's own failure to comply with the terms disqualified him from eligibility for a permanent loan modification.

In his opposition, Johnson implies that Nationstar violated "statutory restrictions and public policy" by resuming foreclosure proceedings in alleged violation of HAMP guidelines.

---

[11] Johnson did not raise these theories in response to Nationstar's motion.

Oppo. 8. Johnson argues that before his loan was transferred from Bank of America to Nationstar for servicing, Bank of America approved Johnson for a loan modification. *Id.* Johnson contends that after the transfer Nationstar was "obligated to honor that modification" in keeping with "HAMP federal guidelines." *Id.* However, Johnson did not allege this fact in his complaint, nor has he submitted any evidence of a prior approval by Bank of America.[12] Instead, the undisputed evidence shows that Johnson defaulted on his mortgage payments in 2010, that his loan was due for payment on March 1, 2010, and that the current arrearage on the loan is approximately $447,801.11. *See* RJN Ex. 2.; Janati Decl. ¶ 14. Under the terms of Johnson's Deed of Trust, and given his failure to comply with the TPP, Nationstar had the right to foreclose and could not have breached its duty of care to Johnson by resuming those proceedings. *See* Deed of Trust 13.

Because Johnson has no viable theory of negligence nor any evidence to support his allegations, Nationstar is entitled to summary judgment on this claim.

## II. MOTION FOR LEAVE TO AMEND

Johnson has requested leave to file an amended complaint to research the "relationship between Washington's Outrage Statute and California's Intentional Infliction of Emotional Distress Statute as well as research into a False and Deceptive Business Claim [and] Promissory Estoppel."[13] Supp. Br. 5.

Federal Rule of Civil Procedure 15 dictates that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Courts consider five factors when deciding whether to grant a motion for leave to amend pursuant to Rule 15: (i) bad faith on the part of the movant; (ii) undue delay in filing the motion; (iii) prejudice to the opposing party; (iv) futility of amendment; and (v) whether the plaintiff has previously amended the complaint."

---

[12] While it is not clear, Johnson's statement may refer to the "California Declaration" of Jason Gardner, dated February 10, 2010. RJN Ex. 2. However, this declaration does not indicate that Bank of America approved a loan modification but rather that a Bank of America collector had "contacted [Johnson] to assess [his] financial situation and explore options . . . to avoid foreclosure." *Id.*

[13] In his Motion, Johnson also assets that Nationstar "dual [tracked]" his loan modification. Mot. to Amend at 5. However, I dismissed this claim when he raised it in his FAC because Johnson never submitted a loan modification. *See* Order on MTD 8; FAC ¶ 48.

*Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2015 WL 4104609, at *1 (N.D. Cal. July 7, 2015). "Above all, in exercising its discretion, the court 'must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Castillo-Antonio v. Mejia*, No. 14-cv-03637-JSC, 2014 WL 6735523, at *1 (N.D. Cal. Nov. 26, 2014).

It would be futile to allow Johnson to amend his Complaint to assert these claims. First, there is no reason why the Washington common law tort of outrage should apply to this case, in which a California resident alleges an injury that occurred in California in connection with a piece of property in California. Second, over the past two years of overseeing this case, I have heard no suggestion of any conduct by Nationstar that "exceed[ed] all bounds of that usually tolerated in a civilized community" that would form the basis for an IIED claim. *See Miller v. Fortune Commercial Corp.*, 15 Cal. App. 5th 214, 228–29 (2017) (citation omitted). Third, although Johnson does not cite a statute for his "False and Deceptive Business Claim," I already dismissed Johnson's claim under California Business and Professions Code section 17200 after agreeing with Nationstar that Johnson's default, not Nationstar's alleged unlawful acts, caused his economic harm. *See* Order on MTD 11. I am aware of no other California law under which the fact of this case could possibly fit. Fourth, the facts do not support a promissory estoppel claim because the only "clear and unambiguous" promise Nationstar made to Johnson was laid out in the letter and call transcript. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012); *see also Alvarez v. Nationstar*, 2017 WL 1153029, at *3 (N.D. Cal. March 28, 2017) (dismissing the promissory estoppel claim because Nationstar had only vaguely promised that it would provide a "good faith" review of the loan modification application). In addition, the timing of the motion, coming after the hearing on Nationstar's motion for summary judgment, strongly counsels against allowing Johnson to amend.

United States District Court
Northern District of California

## CONCLUSION

For the reasons set forth above, Johnson's request for leave to amend his complaint is DENIED, and Nationstar's motion for summary judgment is GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: August 7, 2019

_____
William H. Orrick
United States District Judge